IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREEM GARRETT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GEORGE WAGNER, et al. | : | NO. 11-CV-1888 |

**MEMORANDUM AND ORDER**

Ditter, J.                                                                                                              August 4, 2015

Kareem Garrett brings this action under 42 U.S.C. § 1983 claiming that he was denied medical care after ingesting contaminated food while imprisoned at the Berks County Jail in 2011. Garrett contends that Defendant Lori Beck, LPN, unreasonably delayed his medical care, and that Defendant Charmaine Mikosz, a medical assistant at the jail, failed to alert a medical provider of his condition. Defendants Beck and Mikosz have filed a motion for summary judgment on all counts raised against them in the complaint. For the reasons that follow, the motion for summary judgment will be granted.

I. **Factual and procedural history**[1]

Garrett was incarcerated at the Berks County Jail from November 9, 2010, through June 2011. He claims that while he was being housed in solitary confinement in January 2011, he began vomiting blood and having stomach pain after he ingested a foreign object in his food. Garrett filed a grievance on January 29, 2011, complaining that he hadn't

---

[1] For purposes of this motion, the facts are viewed in the light most favorable to the plaintiff as the non-moving party.

eaten for five days because some unnamed person was tampering with his food.  There is no mention in this grievance that he ingested any foreign object or that he was vomiting or in any pain.  *See Plt.'s Exh. B,* at 2.

On January 31, 2011, Garrett filed a sick call request stating he found plastic in his food and now had an upset stomach, vomiting and pain.  *See Plt.'s Exh. C,* at 2.  He does not mention any blood in his vomit.  He was seen that same day by Charmaine Mikosz.[2]  *See Plt.'s Exh. H,* ¶ 4.  Garrett contends she did not examine him, offer any treatment, or refer him to a nurse or medical provider.  *Id.*

Mikosz testified that she saw Garrett as part of her segregation rounds on the restrictive housing unit.  When she saw him on January 28, 2011, his only complaint was that he was experiencing some pain that was the result of a motor vehicle accident he had in 2009.  *See Plt.'s Exh. F,* at 38.  She referred him for treatment and the medical notes indicate he was seen by a nurse and prescribed medication that same day.  *Id.*  When she saw him on January 31 and February 1, Mikosz reported that he "had no medical complaints or concerns at this time."  *See Plt.'s Exh. J*, at 181.

He was seen by Lori Beck, LPN, on February 1, 2011.[3]  *Id.,* ¶ 6.  He contends that

---

[2] Mikosz worked for Prime Care Medical, Inc. ("Prime Care") as a medical assistant during the relevant period of Garrett's incarceration at Berks County Jail.  Her responsibilities included monitoring inmate's vital signs, walking through the restrictive housing unit to determine if an inmate needed any medical attention ("segregation rounds"), recording their requests, and tasking a nurse to follow-up when required.  She was not permitted to administer medications.

[3] Beck worked for Prime Care as a licensed practical nurse at the time Garrett became ill.  Beck's duties included reviewing sick call requests from inmates seeking medical attention and scheduling appointments with medical providers when required.

he explained his symptoms and claims he showed her bloody vomit he had saved in his toilet. *Id.* Garrett contends she also failed to examine him, offer any treatment, or refer him to a medical provider. *Id.* Beck's notes from this sick call visit do not include any complaints of nausea or vomiting at that time. *See Plt.'s Exh. E*, at 34-35. She testified that if she had received such a complaint she would have stated so in her notes. *Id.*

Another sick call request, dated February 2, 2011, indicated Garrett had eaten dirt, rock and plastic in his food and he had stomach pain. *See Plt.'s Exh D,* at 2. He also stated that he told his complaints to three nurses and no one had gotten back to him. *Id.* He did not complain that he was vomiting or that there was blood in his vomit.

On February 4, 2011, Garrett was seen by Paula Dillmon-McGowan, a nurse practitioner. *See Plt.'s Exh. H,* ¶ 9. She ordered tests to aid in the diagnosis of his problem and prescribed Maalox and Zantac for his symptoms.[4] *Id.* Dillmon-McGowan's notes indicate Garrett complained of "something not right in his stomach," reported consuming what he believed to be a piece of salad bag and dirt pebbles in his burrito on January 29, vomiting developing on January 30 (liquid and blood not observed), and no vomiting for the prior two days . *Plt.'s Exh. J*, at 211. Garrett saw Dillmon-McGowan again on February 14, 2011, and saw Victoria Gessner, M.D., on February 16, 2011. *Id.* at 212. At that time, he denied any nausea, vomiting or diarrhea – his complaint was

---

[4] In his affidavit, Garrett states that Dillmon-McGowan also scheduled him for a doctor's appointment the following Monday, February 7, 2011. *Plt.'s Exh. H,* ¶ 9. However, there is no reference to the scheduling of a doctor's appointment on this visit in her treatment notes. *Plt.'s Exh. J*, at 211.

recorded as muscle pain when he prayed and sometimes when he turned over at night. *Id.*

Garrett's claim concerns the limited period of time from January 31, when he made his sick call request, through February 4, when he was seen and treated for his complaints by a nurse practitioner. He contends this four-day delay in treatment rises to a constitutional violation. There is no indication that Garrett suffered any other injury or lasting effects resulting from this alleged four-day delay in his medical care.[5]

## II. **Standard of review**

The standard for summary judgment is well established. I must consider the evidence in the light most favorable to the non-moving party. If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

However, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions to defeat a summary judgment motion. Here, Garrett must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). He "must present affirmative evidence in order to defeat a properly supported motion"

---

[5] Although Garrett states that he continued to experience stomach pains and episodes of vomiting for the next few months, in his March 7, 2011 letter to the Pennsylvania Department of Corrections, his complaint was that he was "denied medical attention numerous times, I got seen one week later, after vomiting blood for a week." *See* Plt.'s Exh Q.

and cannot "simply reassert factually unsupported allegations." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1992). He cannot "merely rely upon conclusory allegations in [his] pleadings or in memoranda and briefs." *Harter v. GAF Corp.*, 967 F.2d 846, 852 (3d Cir. 1992).

### III. Discussion

In order to demonstrate a viable § 1983 claim for a violation of the Eighth Amendment based on deficient medical care, Garrett must show that: 1) prison officials were deliberately indifferent, and 2) his medical needs were serious. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need of a prisoner constitutes the "unnecessary and wanton infliction of pain" prohibited by the Eighth Amendment. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 341 (3d Cir. 1987). However, negligent diagnosis or an inadvertent failure to provide care does not establish a constitutional violation. *Estelle*, 429 U.S. at 97. A denial or delay of medical treatment is serious when it results in "unnecessary and wanton infliction of pain" or "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss." *Monmouth,* 834 F.2d at 347.

Accepting all Garrett's assertions as true, the facts of this case are very simple. On January 31, 2011, Garrett believed he ate a piece of plastic in his food because he found a piece of plastic on his tray. He had an upset stomach and vomited some blood. On February 1, 2011, he reported his condition and filed a sick call. He was seen that same

5

day by Beck and she placed him on a list to see a medical professional. He was seen by a nurse practitioner within 4 days of his original complaint. His symptoms were treated with Maalox and Zantac and were resolved by the time he saw a doctor on February 16, 2011.

While it has been held that blood in vomit can reveal that a prisoner has a serious medical condition, in this case it did not. *See and compare, Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531 (6th Cir. 2008) (concluding that a detainee, who died from untreated diabetes while awaiting trial, showed symptoms demonstrating a sufficiently serious medical condition that a lay person would have easily recognized the necessity for doctor attention, most notably chest pain but also including blood in vomit). Despite periodically vomiting small amounts of blood, there is no evidence from which a fact finder could conclude that Garrett's condition was serious without ignoring the fact that his treatment was limited to two medications that are regularly used by a great many people and he has suffered no "life-long handicap or permanent loss." *Monmouth,* 834 F.2d at 347.

On the contrary, Dr. Gessner testified at her deposition that ingestion of a little piece of plastic, or even dirt and rocks would cause no harm unless they were so large that they lodged in your throat. *See Plt.'s Exh. R.,* at 16. A patient's vomiting shortly after ingesting an unknown substance would not change the outcome or her work-up. *Id.* at 17. In fact, in this case Dr. Gessner opined that Garrett had some psychological issues and

was using his "perceived physical state to attempt to manipulate his position in the jail." *Id.* at 19.

There is no reasonable finder of fact who would conclude that these circumstances describe deliberate indifference to a serious medical need. Garrett was seen the same day of his initial complaint and each time he complained over the next several days. Any delay in receiving treatment from a medical provider was *de minimus*. His symptoms were minimal and he has suffered what can only be described as minor and sporadic discomfort.

### IV. Conclusion

For the reasons set forth above, I find that Garrett has failed to present evidence from which a fact-finder could conclude that his constitutional rights were violated. I shall grant the motion for summary judgment filed by defendants Beck and Mikosz and enter judgment in their favor on all claims raised in the complaint.

An appropriate order follows.